362 So.2d 1090 (1978)
STATE of Louisiana, Appellee,
v.
David MARCHAND, Appellant.
No. 61722.
Supreme Court of Louisiana.
September 5, 1978.
Rehearing Denied October 5, 1978.
*1091 Harold J. Brouillette, Chief Indigent Defender, Michael F. Kelly, Asst. Indigent Defender, 12th Judicial Dist. Indigent Defendant Office, Marksville, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Eddie Knoll, Dist. Atty., Jeannette Theriot Knoll, Asst. Dist. Atty., for appellee.
TATE, Justice.
The defendant was convicted of simple burglary, La.R.S. 14:62 (1972), and sentenced to seven years' imprisonment at hard labor. His Assignment of Error No. 5 presents reversible error.
Assignment 5
By this assignment, the defendant asserts that the trial court erred in denying his motion for a new trial. The ground asserted for the motion is that unauthorized and prejudicial statements were made to the *1092 jurors by the deputy sheriff who served as their bailiff.
The uncontroverted facts show the following:
At the close of the trial, the jury retired for deliberation at 4:42 p. m. Several hours later, the bailiff conveyed a first request of the jury that the trial judge allow it access to the alleged confession made by the accused. The trial judge refused this request, since a statute prohibits access of the jury to written evidence and requires the jurors to rely upon their memory. La.C.Cr.P. art. 793; State v. Freetime, 303 So.2d 487 (La. 1974) (conviction reversed, where over objection the jury was allowed to obtain the defendant's confession for use during its deliberations).
About an hour later, at about 9:30 p. m., a juror asked the deputy again to request the judge to let the jury see the confession remarking, "If we don't have it, we may be here all night."
The deputy communicated this second request to the trial judge, including the comment that the jury would be in session all night if the request were not granted.
The judge stated that he would not permit the confession to be sent to the juryroom unless both the state and defense agreed. The state agreed to the request, but the defense did not (suggesting that it was not proper to allow the jury to see this one statement alone, when several other important statements were likewise in evidence).
The judge then specifically instructed the deputy to inform the jury that their request was denied, and to tell the jury that "the Judge said they cannot have the confession." Instead of following the judge's orders, the deputy returned to the hall outside the juryroom and informed two of the jurors (the foreman and another) that, "The district attorney said it was okay, the judge said it was alright, but the defense attorney said definitely not; couldn't have it."
The foreman then related this information to the remaining jurors. Within fifteen minutes, or at 9:50 p. m., the jury ended their deliberation and returned a verdict of guilty as charged.
Under these facts, if the evidence proving them is admissible (which the state contests), the unauthorized and prejudicial communication by the deputy to the jury presents reversible error.[1]
Our law provides that the jury shall be sequestered during its deliberations, after the judge delivers the charge, so as to be secluded from outside communication. La.C.Cr.P. art. 791. The purpose of sequestering jurors is to protect them from outside influence and from basing their verdict upon anything other than the evidence developed at the trial. State v. Hunter, 340 So.2d 226 (La.1976); Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).
An unauthorized communication to the jury by its bailiff requires reversal of the verdict, if the communication is prejudicial to the accused. State v. Harville, 170 La. 991, 129 So. 612 (1930); State v. Murray, 164 La. 883, 114 So. 721 (1927); State v. Langford, 45 La.Ann. 1177, 14 So. 181 (1893); State v. Dallas, 35 La.Ann. 899 (1883).
As stated in Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954): "In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of all the parties." A constitutional due process right of fair trial by jury, even, may be violated, if the trial jurors are subjected to influences through the attending bailiffs of the state which may cause *1093 their verdict to be influenced by circumstances other than the evidence developed at the trial. Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1964).
We think it to be obvious that reversible (i. e., non-harmless) error here occurred, when the deputy improperly communicated to the jurors that defense counsel alone were preventing them from obtaining access to the confession they desired (but which a statute prohibits their access to after they have retired to the juryroom).
In the course of their five hours' deliberation, the jurors had twice requested the confession. On the occasion of their second request, some fifteen minutes prior to their verdict, they indicated they would be in session all night unless they received the confession. Yet, when denied it (and informed that the denial was due to defense counsel), they reached a verdict (11-1) of guilty within fifteen minutes. "The promptness with which the jury returned their verdict after the statement was made by the sheriff creates a strong presumption that the jury was influenced by what was said by the sheriff," State v. Harville, 170 La. 991, 129 So. 612 (1930).
Admissibility of Evidence
The state, however, objected to the admissibility of any evidence by the jurors proving the communication to them of the deputy's statement. The state relies upon La.R.S. 15:470, which provides that a juror is incompetent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member.[2]
The trial court allowed the two jurors to testify about their conversations with the deputy. It reasoned that, since these conversations took place outside of the juryroom (in the hall), they did not fall within the purview of La.R.S. 15:470. The trial court further allowed these jurors to testify that they related the information obtained from the deputy to the other jurors, subject to the state's objection (which the trial judge felt to be valid), for the stated purpose of avoiding a remand.
The trial judge refused, however, to admit any testimony as to the effect of the receipt of this information by the other jurors or as to whether any juror changed his vote to guilty as a result of the receipt of the information.
The trial court was correct in the latter ruling, which disallowed testimony by the jurors as to the effect of the receipt of the information from the deputy on the jury deliberations and the votes of individual jurors. Such testimony by them would impeach their own verdict within the prohibition of La. R.S. 15:470. The policy behind that statute is to preserve the finality of jury verdicts and the confidentiality of discussion among the jurors in deliberation. State v. Abney, 347 So.2d 498 (La.1977); State v. Durr, 343 So.2d 1004 (1977).
However, despite the state's contrary contention that La.R.S. 15:470 bars it, we find to be admissible the testimony of the jurors in proving the unauthorized and prejudicial communication made to the jury by their bailiff, i. e., the testimony by the jurors as to their conversation with the deputy in the hall, as well as their testimony that they related this information to the other jurors.
The testimony admitted did not relate to alleged juror misconduct, as to which their testimony is incompetent, see State v. Durr, 343 So.2d 1004 (La.1977). Instead, it dealt with the overt act of a third person which caused extraneous prejudicial information to be considered by the jury in reaching its verdict.
A majority of American jurisdictions have adopted an interpretation of the principle *1094 incorporated by La.R.S. 15:470, to the effect that no testimony by a juror will be received (at least if objected to) as to jury conduct within the juryroom, not even testimony proving jury misconduct prohibited by statute. 8 Wigmore on Evidence, Section 2354 (McNaughton Rev.1961). All jurisdictions agree that the principle forbids evidence as to the mental processes and reasons of the jury in reaching a decision. Id., Sections 2348-50. See e. g., State v. Abney, 347 So.2d 498 (La.1977).
On the other hand, misconduct of a nature which invalidates a jury verdict may always be proved through the testimony of non-jurors; but American jurisdictions differ as to whether the jurors may themselves prove misconduct of a nature extraneous to the (always-inadmissible) content and course of the jury deliberations and the reasons for its verdict. See Wigmore, Sections 2354-55.
Louisiana decisions have held that jurors are competent to establish an overt act independent of the jury deliberations, if this overt act is in violation of law or of the statutory formalities designed to assure the impartiality of the jury finding and the jury's freedom from influences extraneous of the evidence presented to it for its consideration. State v. Kifer, 186 La. 674, 173 So. 169 (1937) (prohibited-presence of prosecutor with grand jury during its deliberations and voting); State v. Riggs, 110 La. 509, 34 So. 655 (1903) (illegal intimidation of a juror within the juryroom); Hawkins v. New Orleans Printing & Publishing Co., 29 La.Ann. 134 (1877) (misconduct of the officer in charge of the jury, who bribed a juror).
In Kifer, where juror evidence was held admissible to prove an overt act (the presence of the prosecutor) exerting extraneous influence upon the jury deliberations in contravention of statute, this court held that the public policy of the statute prohibiting improper influence upon jury deliberations outweighed the policy of the prohibition by the statute (now La.R.S. 15:470) designed to prohibit jurors from impeaching the finding of their jury.
As in that decision, construing the two statutory prohibitions together, we do not believe that the statutory prohibition against jurors impeaching their verdict was legislatively intended to defeat the equally valid statutory prohibition against unauthorized communications to the jury which might influence their verdict, i. e., by preventing proof of it through the only means possible, the testimony of the jurors who received and transmitted the unauthorized communication.
Conclusion
Accordingly, we find merit to the assignment of error. Although we regret that the efforts of all counsel in the effective prosecution and defense of this case were aborted by the inadvertent act of the court bailiff, nevertheless this act deprived the accused of his constitutional and statutory right to an impartial jury verdict untainted by unauthorized communications received in contravention of statute, nor influenced by any consideration other than the defendant's innocence or guilt on the basis solely of the evidence properly before the jury.
The verdict and sentence must therefore be reversed, and the case remanded for a new trial in accordance with law.
REVERSED AND REMANDED.
SANDERS, C. J., dissents with written reasons.
MARCUS, J., dissents and assigns reasons.
SUMMERS, J., dissents.
SANDERS, Chief Justice (dissenting).
The threshold question here is whether or not the testimony of jurors that they received an unauthorized communication from the deputy sheriff in charge of the jury is admissible to invalidate the verdict.
The controlling statute is LSA-R.S. 15:470, which provides:

"No juror, grand or petit, is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, *1095 qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member." (Emphasis added.)
The statute prohibits a juror from testifying as to his own or another juror's misconduct. But it does more. It also prohibits a juror from giving evidence to impeach any verdict. This prohibition is explicit and, absent legislative change, should be given effect by this Court.
When the statute is applied to the present case, it is clear that the testimony of the two jurors concerning the deputy's communication is inadmissible since its purpose was to show that the jurors were influenced in their verdict by extraneous information. Its purpose was to impeach the verdict.
The court decisions elsewhere are divided on this question. Representative decisions supporting the view that a juror's testimony is inadmissible under these circumstances are: Ruiter v. Knudson, 318 Ill.App. 211, 47 N.E.2d 534 (1943); DeGarmo v. Luther T. Mayo, Inc., 4 Cal.App.2d 604, 41 P.2d 366 (1935); People v. Pizzino, 313 Mich. 97, 20 N.W.2d 824 (1945); Gardner v. Minea, 47 Minn. 295, 50 N.W. 199 (1890); Sanitary Dist. of Chicago v. Cullerton, 147 Ill. 385, 35 N.E. 723 (1893); State v. Brittain, 89 N.C. 481 (1883); Anno.Juror's Testimony as to Tampering, 146 A.L.R. 514, 518-520.
There is little value, however, in counting the decisions elsewhere because the statute here is unambiguous. As written, it admits of no third-party communication exception. Compare Rule 606(b), Fed.Rules of Evidence, 28 U.S.C.A.
For the reasons assigned, I respectfully dissent.
MARCUS, Justice (dissenting).
La. R.S. 15:470 provides that: "No juror . . . is competent . . . to give evidence to explain, qualify or impeach . . . any verdict . . . ." I consider that the testimony by the jurors as to their conversation with the deputy in the hall, as well as their testimony that they related this information to the other jurors, is clearly prohibited by this statutory provision. Rule 606 of the Federal Rules of Evidence sets forth a similar prohibition but provides "except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the juror's attention or whether any outside influence was improperly brought to bear upon any juror." In my view, any change in the rule in Louisiana addresses itself to the legislature. Accordingly, I respectfully dissent.
NOTES
[1] We should note that the testimony indicates that the deputy is an honorable man of years of service and that his failure to follow the judge's instructions probably stemmed from him being hard of hearing, not from any design to influence the jury to convict the accused.
[2] La.R.S. 15:470 provides:

"No juror, grand or petit, is competent, to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member."